UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
JACOB STEVENS, as
Administrator of the ESTATE OF
CLARA HEYWORTH, deceased,

                     Plaintiff,         **MEMORANDUM & ORDER**

    -against-                       12-CV-2909 (KAM)

ANTHONY WEBB, et al.,

                  Defendants.

-------------------------------X

**MATSUMOTO, United States District Judge:**

         On June 11, 2012, plaintiff Jacob Stevens ("plaintiff"
or "Stevens"), as administrator of the estate of his late wife,
Clara Heyworth ("Heyworth"), filed this action against Anthony
Webb ("Webb"), Ayesha P. Cubia-Webb ("Cubia-Webb"), the City of
New York, New York City Police Department ("NYPD") Sergeant
Alessio Bono ("Bono"), and two pseudonymous members of the
Police Department ("Roe" and "Doe").  Plaintiff filed an amended
complaint on November 8, 2012, adding two additional
pseudonymous defendants ("Moe," an NYPD detective, and "Boe," a
City employee) and asserting constitutional claims pursuant to
42 U.S.C. § 1983 ("Section 1983"), a *Monell* claim against the
City for the same constitutional violations, and various claims
under New York law related to a car accident that caused the
death of Ms. Heyworth and the subsequent investigation of that
accident.  (*See generally*, Am. Compl., ECF No. 16.)  On July 8,

2013, the City and Bono, and, if served, defendants Roe, Doe, Moe and Boe (collectively, "the City defendants") filed a motion to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss, ECF No. 25.) For the reasons set forth in this opinion, defendants' motion to dismiss plaintiff's federal and state law claims against the City defendants is granted.

## BACKGROUND[1]

This case arises out of the tragic death of Ms. Heyworth after she was struck by defendant Webb as he drove Cubia-Webb's vehicle. In the early morning of July 10, 2011, defendant Webb was driving Cubia-Webb's car in Brooklyn, New York. (Am. Compl. ¶¶ 18-19.) Webb was intoxicated and exceeding the speed limit. (Am. Compl. ¶ 21.) He was also driving by himself, a violation of the conditions of his driver's license. (Am. Compl. ¶ 21.) At 1:50 a.m., Webb struck Ms. Heyworth as she crossed the street on foot to meet her husband, plaintiff Stevens. (Am. Compl. ¶ 19.) Stevens witnessed the collision between the vehicle and the decedent occur, but he cannot recall the specifics of the collision due to the psychological trauma of the event. (Am. Compl. ¶ 20.)

---

[1] The following facts, taken from plaintiff's Amended Complaint, documents incorporated by reference into the Amended Complaint, and documents within the purview of judicial notice, are assumed to be true for the purposes of defendants' motion to dismiss.

At 2:05 a.m., police officers from the 88th Precinct of the NYPD arrived at the scene of the accident. (Am. Compl. ¶ 22.) One of the officers instructed Stevens not to speak with Webb with words to the effect, "We've got this situation covered." (Am. Compl. ¶ 25.) Between 2:06 and 2:08 a.m., another officer requested that the Accident Investigation Squad ("AIS") report to the scene and informed the emergency dispatcher that he believed that Heyworth "may be likely" to die from her injuries. (Am. Compl. ¶ 22.) AIS is "comprised of officers assigned to the NYPD Highway District in each borough who are responsible for the investigation of fatal and other serious crashes." (Am. Compl. ¶ 23.) By contrast to the other traffic officers in the Police Department, AIS may investigate traffic accidents and may issue summonses, even if the AIS officer has not personally witnessed the incident. (Am. Compl. ¶¶ 59-61 (citing NYPD Oversight Hr'g Tr. at 24:3-12)[2]; *see also* Am. Compl. ¶ 64.)

Around the time AIS was called, Heyworth was transported to the hospital. (Am. Compl. ¶ 27.) Although the NYPD officers attempted to summon AIS to the scene of the accident again at 2:10 a.m. and 2:34 a.m., AIS did not arrive,

---

[2] "NYPD Oversight Hr'g Tr." refers to the Transcript of the Joint Hearing of the New York City Council Committees on Public Safety and Transportation, No. T2012-4275, "Oversight: Proceeding with Caution – an Examination of NYPD's Accident Response and Enforcement of Traffic Rules Relating to Cars, Bikes and Trucks," held on February 15, 2012, *available at* legistar.council.nyc.gov.

and the call to the Squad was eventually cancelled at 2:59 a.m.
(Am. Compl. ¶¶ 24, 28.)  The police dispatcher's records of this
cancellation indicate that "HWY 2 Sgt," whom plaintiff believes
to be either defendant Bono or Doe, called off the AIS request
because Heyworth was still alive when she arrived at the
hospital.  (Am. Compl. ¶¶ 28-30.)

After the cancellation of the AIS call, the NYPD
officers measured Webb's blood alcohol level but did not have
the necessary equipment because AIS generally measures a
driver's blood alcohol content after a serious car crash occurs.
(Am. Compl. ¶¶ 31-32 (citing NYPD Patrol Guide).)  Webb was
ultimately tested about an hour later, had a blood alcohol
content of 0.07%, and was arrested for driving while intoxicated
in addition to other charges.  (Am. Compl. ¶ 33.)  It was later
determined that the equipment used to measure Webb's blood
alcohol level had not been properly calibrated (although it did
give an accurate reading), and could not be used in court.  (Am.
Compl. ¶¶ 36-37.)  Other than conducting Webb's blood alcohol
test, the NYPD officers at the site of the crash did not
preserve or record any evidence on the day of the accident
because AIS is typically responsible for this type of evidence-
gathering.  (Am. Compl. ¶¶ 34-35.)

At 2:59 a.m. on July 10, at approximately the same time
the AIS request was cancelled, Heyworth arrived at Bellevue

Hospital. (Am. Compl. ¶¶ 27-28.) On July 11, 2011,[3] Heyworth died from her injuries, which included "blunt impact injuries to the head, the right lower extremity, and the thorax, as well as extensive hemorrhages and shattered bones." (Am. Compl. ¶ 19, 38.) On July 13, 2011, Stevens informed an AIS detective, referred to as Detective Moe, that Heyworth had died, and Moe in turn told Stevens that AIS would be investigating the accident. (Am. Compl. ¶ 43.) Stevens was also told by Tom Kessler, who was employed by the Kings County District Attorney's Office, on July 14 or July 15, that someone from the Police Department was investigating the accident. (Am. Compl. ¶ 45.) On October 15, 2011, Steven was informed that the Office would seek to have Webb indicted on charges that would include vehicular manslaughter. (Am. Compl. ¶ 48.)

Stevens later learned that the Police Department did not in fact resume investigating Heyworth's death until on or after July 15, 2011. (Am. Compl. ¶ 44.) Stevens avers that, had he known the NYPD was not investigating, he would have made efforts to preserve evidence, such as the skid marks from Webb's car that Stevens observed on July 13. (Am. Compl. ¶¶ 41-42.) Plaintiff catalogues the evidence lost as a result of the delayed resumption of the investigation as follows: witnesses

---

[3] Although the Amended Complaint refers at several points to dates in July of 2012, it appears that, reading these paragraphs in context, plaintiff's counsel intended to refer to July of 2011.

and surveillance footage from nearby businesses were not identified; information from the vehicle's Event Data Recorder, such as car speed, was overwritten; the location of Heyworth in the road and the vehicle's skid marks were not noted or photographed; and Webb's blood alcohol level was not tested with a properly calibrated instrument while he was still intoxicated. (Am. Compl. ¶ 46.) In light of the lack of admissible evidence preserved after the crash, on February 16, 2012, the District Attorney's Office informed Stevens that the criminal charges against Webb would not be pursued. (Am. Compl. ¶ 50.)

Plaintiff alleges that the loss of evidence and lack of investigation in Heyworth's case was due to the NYPD's policy not to investigate many serious vehicular crashes that do not result immediately in death or in a victim who is likely to die and that officers are untrained as to the definition of "likely to die." (Am. Compl. ¶¶ 62, 65, 71-76.) Plaintiff further alleges that generally the NYPD fails to investigate serious traffic crashes that could lead to criminal charges due, in part, to the pressure exerted on the NYPD to reduce its crime statistics. (Am. Compl. ¶¶ 94-95; *see also* ¶¶ 96-107.)

## DISCUSSION

### I. Motion to Dismiss Standard

The City defendants seek to dismiss the claims asserted against them pursuant to Federal Rule of Civil

Procedure 12(b)(6).  Under Rule 12(b)(6), a pleading may be dismissed for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party," *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007), plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 555.  Indeed, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss."  *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir. 2006) (alterations in original) (internal quotation marks omitted).  Applying the above standard, the court will first address plaintiff's federal law claims and then plaintiff's state law claims against the City defendants.

## II.  **Federal Claims**

Plaintiff raises two federal claims pursuant to Section 1983 against the City defendants: that plaintiff was deprived of procedural due process in violation of the

Fourteenth Amendment of the United States Constitution, and that the defendants infringed upon plaintiff's right to access the courts in violation of the First and Fourteenth Amendments. Plaintiff also alleges that the City is liable for these constitutional violations as a result of its policies and practices ("*Monell* claim"). For the reasons stated below, defendants' motion to dismiss each of these federal claims is granted.

### a. Deprivation of Procedural Due Process

Plaintiff argues that defendants' denial of his right to an "immediate investigation" of the crash as required by New York's Vehicle and Traffic Law ("VTL") deprives him of procedural due process. (Pl. Mem. at 23.) Specifically, plaintiff alleges that he has property interests in any potential recovery from his civil claims against Webb and Cubia-Webb and in compensation from the New York State Office of Victim Services. Plaintiff claims that the City defendants impaired these interests by prematurely terminating the crash investigation and causing the destruction of evidence. Plaintiff further claims that the lack of a pre-deprivation opportunity to challenge defendants' obstructions and failures eliminated or impaired his property interests. (Am. Compl. ¶¶ 148-50, 152-53, 155.)

"To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment, [the court] must first identify the property interest involved." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005). It is well-settled that to "'have a property interest in a benefit, a person . . . must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). Plaintiff's alleged entitlement to an investigation of the type he seeks is created by state law, but whether it "rises to the level of a legitimate claim of entitlement protected by the Due Process Clause" is determined by federal constitutional law. *Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 34 (2d Cir. 2010) (quoting *Castle Rock*, 545 U.S. at 757).

Supreme Court and Second Circuit case law emphasizes two essential aspects of constitutionally protected entitlements. First, the benefit may not be discretionary. *See Castle Rock*, 545 U.S. at 756 ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994) ("A

plaintiff has a legitimate claim of entitlement to a particular benefit if, absent the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted" (internal citations and quotation marks omitted)).  Second, the entitlement must be owed to the individual, rather than to the public at large.  *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) ("The hallmark of property, the Court has emphasized, is an individual entitlement"); *West Farms Assocs. v. State Traffic Comm'n of State of Conn.*, 951 F.2d 469, 472 ("[U]niversal benefits are not property interests protected by the Due Process Clause."); *Elliot v. City of New York*, No. 06-CV-296, 2008 WL 4178187, at *7 (S.D.N.Y. Sept. 8, 2008) ("Plaintiffs have not alleged an entitlement owed to them as individuals rather than as members of an undifferentiated public, which leaves them short of claiming a constitutionally-cognizable property interest."); *see also Zahra v. Town of Southold*, 48 F.3d 674, 682 (2d Cir. 1995) ("Our precedents have firmly established that the mere violation of a state law does not automatically give rise to a violation of federal constitutional rights.").  Examples of individual entitlements include a police officer's contractual right to a pension, *see, e.g.*, *Morris v. New York City Employees' Retirement System*, 129 F. Supp. 2d 599, 606-07 (S.D.N.Y. 2001) (examining Second Circuit case law), and an employee's statutory

right to access to a state commission hearing after an incident of employment discrimination, *see Logan*, 455 U.S. at 428-433.

Although the question of whether the relevant provisions of the VTL are mandatory may be in dispute, it is clear that the VTL does not confer any individual entitlements upon plaintiff. The parties disagree about the applicability of *Harrington v. County of Suffolk*, 607 F.3d 31 (2d Cir. 2010), to the instant matter, however, the court concurs with the City defendants that *Harrington* is instructive, particularly on the question of whether the benefits at issue are owed to the plaintiff individually, rather than to the public. *Harrington* involved a car accident that caused the death of plaintiffs' son, after which the police failed to, among other things, determine whether the driver who struck the victim was intoxicated. *Id.* at 33. At issue was whether a county code that mandated that the Police Department "detect and arrest offenders" and "enforce all [applicable] laws and ordinances" conferred a property right upon plaintiffs. *Id.* at 34 (citing Suffolk County, N.Y. Code § C13-6).

The Second Circuit held not only that the code was not sufficiently mandatory to create a constitutionally protected property interest, but also that the code did not give rise to an individual entitlement. *Id.* at 35. The court held that the law enforcement obligations created by the code ran "to the

public generally, and not to the individual victims of the crime," reasoning that "Section C13-6 refers to a general 'duty' of police departments to maintain public order and safety, not a duty owed to any particular person or group." *Id.* The court followed its previous reasoning in *West Farms*, in which it held that the "intended beneficiaries" of a Connecticut state statute, which provided a right to "anyone who might encounter unreasonable environmental consequences as the result of a particular development" to intervene in administrative proceedings, was "entirely generalized" and did not, therefore, create a protected property interest. 951 F.2d at 472.

In this case, Sections 603 and 603-a of the VTL, upon which plaintiff's claims are predicated, are similarly generalized. Section 603 states, in part: "Every police or judicial officer to whom an accident resulting in injury to a person shall have been reported . . . shall immediately investigate the facts, or cause the same to be investigated, and report the matter to the commissioner forthwith." Section 603-a mandates that accidents resulting "in serious physical injury or death to a person" either discovered by a police officer or reported to him or her within five days of the accident, must be investigated and reported to the commissioner. The investigative report must also contain information regarding

> [T]he facts and circumstances of the accident; the
> type or types of vehicles involved . . .; whether
> pedestrians were involved; the contributing factor or
> factors; whether it can be determined if a violation
> or violations of [the VTL] occurred . . .; and the
> cause of such accident, where such cause can be
> determined.

N.Y. VTL § 603-a. There is no indication in the statutory text

that the benefits of the investigation run to a particular

individual or individuals. Instead, any such benefit "arises

*incidentally*, not out of some new species of government benefit

or service, but out of a function that government actors have

always performed." *Castle Rock*, 545 U.S. at 767 (emphasis in

the original).

Plaintiff argues that the relevant VTL provisions were

"enacted expressly for the benefit of pedestrian crash victims

to aid their search for compensation" and points to a portion of

the statute's legislative history to support his contention.

(Pl. Mem. at 23-24; *see also* Pl. Mem. at 8-10 (arguing, in the

context of plaintiff's state law claims, that the statute was

designed specifically to benefit pedestrian victims).) The

legislative history of Section 603-a does not support

plaintiff's contention.[4] A review of the bill jacket suggests

---

[4] Plaintiff attached as Exhibit A to his Memorandum a copy of the bill jacket
for New York Senate Bill 2221 of the 2001 Regular Session, which created VTL
Section 603-a (ECF No. 31-1). In ruling on a motion to dismiss pursuant to
Rule 12(b)(6), a court may take judicial notice of a statute's legislative
history. *Wang v. Pataki*, 396 F. Supp. 2d 446, 453 n.1 (S.D.N.Y. 2005). To
avoid confusion, the court will cite to the bill jacket's page number as
displayed on ECF.

that the legislators' focus was not on the compensation of
particular victims but, rather, on collecting sufficient data
about vehicular accidents in order to prevent those accidents in
the future.  For example, the "Justification" section of the
bill jacket states that, "motorcycle, bicycle and the pedestrian
accidents need to be scrutinized in order to draw data and
information with which to address these high fatality rates."
(ECF No. 31-1, at 3.)  The sponsor's letter to then-Governor
Pataki similarly argues that the bill is necessary because
"there is no uniform requirement or procedure for investigations
into [motor vehicle-related] accidents . . . .  Therefore, in
order to get a sense on [*sic*] what exactly is causing these
accidents, I urge you to sign S.2221-A/A.4156-A into law so that
we may effectively address those issues."  (ECF No. 31-1, at 5.)
The New York State Division of the Budget and the Metropolitan
Police Conference of New York State similarly describe the bill
as facilitating data-gathering, which in turn would enable the
Department of Motor Vehicles to make further recommendations to
prevent accidents.  (ECF No. 31-1, at 8, 13.)

     In light of the plain language of the VTL and the
legislative history discussed above, the court finds that the
enactment of Sections 603 and Section 603-a of the VTL did not
create or convey an individual entitlement upon the victims of
motor vehicle accidents.  Therefore, in line with the Second

Circuit's factually similar decision in *Harrington*, the court finds that the duty of investigation imposed by VTL Sections 603 and 603-a does not run "to the individual victims of crime" and "does not create an *individual entitlement* to a police investigation, and therefore cannot give rise to a constitutionally protected property interest." 607 F.3d at 35 (emphasis in the original). Accordingly defendants' motion to dismiss plaintiff's due process claim, as alleged in Count Ten of the Amended Complaint, is granted.

      b. Right of Access to the Courts

      Plaintiff's complaint also fails to state a claim for the deprivation of plaintiff's right of access to the courts. There are two types of claims for constitutional access to the courts: forward-looking claims, in which "systematic official action frustrates a plaintiff . . . in preparing and filing suits at the present time," and backward-looking claims, which "cover[] [claims] not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." *Christopher v. Harbury*, 536 U.S. 403, 413-14 (1974); *see also Farella v. City of New York*, No. 05-CV-8264, 2007 WL 2456886, at *7 (S.D.N.Y. Aug. 23, 2007) (noting, after a review of the case law, that all viable denial of access to the courts claims fall into one of the two *Harbury*

categories).  The parties concur that plaintiff is invoking a backward-looking claim.

There is scant case law on backward-looking access to the courts claims in this Circuit because, as the Second Circuit recently noted, "the viability of [these] claims is far from clear." *Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012). "[I]f recognized, [backward-looking claims] would be available only if the government action caused the plaintiff's suit to be dismissed as untimely, . . . or if official misconduct was so severe as to render[] hollow his right to seek redress, . . . [such as] if a judicial remedy was completely foreclosed by false statement or nondisclosure." *Id.* at 128 (citing *Broudy v. Mather*, 460 F.3d 106, 120 (D.C. Cir. 2006); *Swekel v. City of River Rouge*, 119 F.3d 1259, 1264 (6th Cir. 1997); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984)*, overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005)) (internal quotation marks and footnote omitted).  In one of the cases that the Second Circuit cited in its *Sousa* opinion, the District of Columbia Circuit emphasized that a remedy must be completely foreclosed and that "relief on the underlying claims [may not] still [be] available in a 'suit that may yet be brought,' or a 'presently existing claim.'" *Broudy v. Mather*, 460 F.3d 106, 120 (D.C. Cir. 2006) (quoting *Harbury*, 536 U.S. at 415-16).

In general, a backward-looking claim must be predicated upon "deliberate action to destroy evidence" or "prevent plaintiff[] from obtaining evidence." *Farella*, 2007 WL 2456886, at *8. In light of these principles, courts have found viable claims alleging that the government actively concealed the United States Army's involvement in a medical experiment that led to a patient's death, *Barrett v. United States*, 798 F.2d 565, 575 (2d Cir. 1986), and alleging that City police officers "destroyed crime scene photographs, removed the victims' socks and shoes from the crosswalk, [and] intimidated witnesses" after another officer struck and killed plaintiffs with his car, *Small v. City of New York*, 274 F. Supp. 2d 271, 278 (E.D.N.Y. 2003), *vacated and remanded on other grounds sub nom. Pena v. DePrisco*, 432 F.3d 98 (2d Cir. 2005). On the other hand, no denial of access claim has been found to exist where the City failed to conduct statutorily mandated air-quality tests but did not destroy or alter test results, *Farella*, 2007 WL 2456886, at *9, *9 n.12.[5]

In this case, plaintiff fails to allege, because he cannot do so, that his judicial remedies were completely

---

[5] Plaintiff observes that the reasons for dismissing the *Farella* claims are distinguishable because the *Farella* plaintiffs had not engaged in certain required administrative processes and the City later made significant efforts to investigate. *See* 2007 WL 2456886, at *9. Nonetheless, the *Farella* court's discussion of the "unprecedented" nature of a denial of access claim based on a City entity's inaction is helpful, particularly because no other courts in this Circuit appear to have squarely confronted a denial of access claim based on the City's inaction.

foreclosed by the lack of an immediate investigation of the nature he seeks, or that the inadequate investigation was part of a deliberate cover-up by the NYPD. Plaintiff alleges in the Amended Complaint that his ability to pursue "claims for Heyworth's wrongful death; for punitive damages against Webb; and in opposing comparative negligence defenses anticipated to be asserted by Webb and Cubia-Webb" (Am. Compl. ¶¶ 161-62) was destroyed by the failure of the NYPD to immediately investigate the crash. In the instant case, however, plaintiff has brought a wrongful death claim and seeks punitive damages against Webb and Cubia-Webb. (Am. Compl. ¶¶ 118-120). Although the allegedly negligent investigation of Ms. Heyworth's death may have impaired plaintiff's ability to prove his wrongful death claim, that claim has not been completely foreclosed.

Moreover, plaintiff has not alleged the type of deliberate cover-up or deliberate destruction of evidence that has given rise to backward-looking access to the courts claims in the past. Plaintiff's allegation that the City acted deliberately is premised upon his assertion that the "acts and omissions of the NYPD Defendants in failing to investigate the Crash were committed pursuant to a policy of the City of failing to investigate crashes causing non-fatal serious physical injuries, and of underreporting vehicular crime." (Am. Compl. ¶ 164.) Other than plaintiff's conclusory assertion that the

cessation of the investigation of Ms. Heyworth's accident between July 10 and July 15, 2011 was due to the Police Department's desire to avoid its reporting responsibilities, there are no facts in the Amended Complaint to suggest that the police officers, and Bono in particular, were motivated by a desire not to report the accident. *See, e.g.*, *Achtman*, 464 F.3d at 337 ("[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.") (citation omitted). Further, the court cannot find any authority for the proposition that neglecting to gather evidence rises to the level of deliberate destruction of gathered evidence and states a claim for the denial of access to the courts, an already rarely recognized claim. For the foregoing reasons, defendant's motion to dismiss plaintiff's access to the courts claim, as alleged in Count Eleven of the Amended Complaint, is granted.

### c. *Monell* claim

Plaintiff also alleges a claim pursuant to *Monell* v. *Department of Social Services*, 436 U.S. 658 (1978), that the City is liable for the constitutional violations discussed above. "Following *Monell* and its progeny, a municipality cannot be held liable under § 1983 under a theory of *respondeat superior.* Rather, there must be a 'direct causal link between a municipal policy or custom and the alleged constitutional

deprivation.'"  *Abreu v. City of New York,* 657 F. Supp. 2d 357,

360 (E.D.N.Y. 2009) (quoting *City of Canton v. Harris,* 489 U.S.

378, 385 (1989)) (additional internal citations omitted).

Because the court has found that plaintiff has not adequately

alleged a constitutional violation, plaintiff's municipal

liability claim also fails and defendants' motion to dismiss

plaintiff's *Monell* claim, as alleged in Count Twelve of the

Amended Complaint, is granted.

## III. State Law Claims[6]

Plaintiff brings several state law claims against the

City defendants: 1) negligence under New York VTL §§ 603 and

603-a; 2) breach of special duty; 3) failure to supervise and

train (against Bono only); and 4) *respondeat superior* liability

(against the City only) (respectively Counts Five through Nine

of the Amended Complaint).  For the following reasons, the

Amended Complaint does not state a claim as to these causes of

---

[6] This court has jurisdiction over the state claims in this action pursuant to
28 U.S.C. § 1332(a)(2), which provides that a district court has original
jurisdiction over controversies between "citizens of a State and citizens or
subjects of a foreign state, except that the district courts shall not have
original jurisdiction . . . of an action between citizens of a State and
citizens or subjects of a foreign state who are lawfully admitted for
permanent residence in the United States and are domiciled in the same
State."  In response to the court's order to show cause, issued on March 10,
2014, plaintiff's counsel furnished documentation that Ms. Heyworth was, at
the time of her death, a citizen of Australia and did not have lawful
permanent residence in the United States.  (ECF No. 35.)  Because "the
citizenship of a decedent, not the executor, is the only citizenship
pertinent for diversity purposes," *Johnson v. Smithsonian Inst.*, 80 F. Supp.
197, 199 (S.D.N.Y. 2000) (citation omitted), plaintiff is considered a
citizen of a foreign state not lawfully admitted for permanent residence.  In
light of the fact that Webb, Cubia-Webb and the City defendants are New York
citizens (Am. Compl. ¶¶ 5-12), jurisdiction over the state law claims exists
pursuant to 28 U.S.C. § 1332.

action.  The City defendants' motion to dismiss the state law claims is therefore granted.

    a. Negligence under VTL §§ 603 and 603-a and Breach of Special Duty

    The central dispute between the parties is whether New York Vehicle and Traffic Law Sections 603 and 603-a create a special duty to victims of car crashes, like Ms. Heyworth, and whether this duty gives rise to a private right of action under those statutes.  Neither the plain language of these provisions, nor any other provision in the same chapter of the VTL, expressly provides a private right of action for the breach of VTL §§ 603 and 603-a.  The New York Court of Appeals has held that an agency of government may not be held liable "for the negligent performance of a [mandatory] governmental function unless there existed 'a special duty to the injured person, in contrast to a general duty owed to the public.'"  *McLean v. City of New York*, 12 N.Y.3d 194, 199 (2009) (quoting *Garrett v. Holiday Inns*, 58 N.Y.2d 253, 261 (1983)); *see also id.* at 203 (clarifying the above standard by stating that "[g]overnment action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general.").

A "special relationship" giving rise to this duty "can be formed in three ways: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation." *Pelaez v. Seide*, 2 N.Y.3d 186, 199-200 (2004) (citing *Garrett*, 58 N.Y.2d at 261-62). Although some of plaintiff's allegations in the complaint seem to relate to the "justifiable reliance" prong of the special relationship test, plaintiff argues in his papers only that VTL Section 603 and 603-a create a special duty. Plaintiff also rejects the portion of defendants' arguments relating to justifiable reliance or voluntary assumption of a special duty by stating that those arguments are inapposite to plaintiff's claim. (Pl. Mem. at 10.) Therefore, the court considers only the statutorily created duty.

In *Pelaez*, the New York Court of Appeals held that "[t]o form a special relationship through breach of a statutory duty, the governing statute must authorize a private right of action," and provided a three-prong test for determining whether a private right of action exists under a statute that does not provide an explicit remedy. 2 N.Y.3d at 200. The three

factors, all of which are necessary for a finding of a private right of action are as follows: "(1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the governing statute; and (3) to do so would be consistent with the legislative scheme." *Id.* (citing *Sheehy v. Big Flats Cmty. Day*, 73 N.Y.2d 629, 633 (1989)).

There appears to have been only one court to have squarely analyzed whether a tort action may be maintained under Section 603 or 603-a. In *Cunningham v. City of New York*, 907 N.Y.S.2d 529 (N.Y. App. Term 1st Dep't 2010), an intermediate appellate court applied the *McLean-Pelaez* test and found that VTL Sections 600[7] and 603 provided a private right of action for two pedestrians struck by an unknown driver and prevented from filing an insurance claim because of the lack of a police investigation (the pedestrians do not appear to have been seriously injured and, therefore, the case does not discuss Section 603-a). *Id.* at 530. Specifically, the court denied the City's motion to dismiss where the police did not "prepare and file an accident report . . . or provide plaintiffs with the unidentified driver's name," reasoning that the VTL created a special duty to plaintiffs. *Id.*

---

[7] VTL § 600, not at issue in this case, requires that drivers who cause damage to property must not leave the scene of the accident without providing their insurance information.

As both parties note, this court is bound "by the law of New York as interpreted by the New York Court of Appeals," and "the language of the state intermediate appellate courts [is a] helpful indicator[] of how the state's highest court would rule." *Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013). Although decisions of intermediate state courts are not binding, a federal court should not disregard those decisions "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 126 (2d Cir. 2010) (quoting *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005)).

Having reviewed the Court of Appeal's case law, the relevant sections of the VTL, and the statute's legislative history, the court concludes that the Court of Appeals would not follow the Appellate Term's reasoning in *Cunningham.* Specifically, the court finds that the first two *Pelaez* factors for finding a private right of action— whether "plaintiff is one of the class for whose particular benefit the statute was enacted" and "recognition of a private right of action would promote the legislative purpose of the governing statute," 2 N.Y.3d at 200— militate strongly against finding a private right of action in this case. As noted in the above discussion of Section 603-a in reference to plaintiff's federal claims, the

legislative history of Section 603-a clearly indicates that the

provision was enacted to provide more accurate reporting to the

Commissioner, and not to benefit accident victims directly.

*(See, e.g.*, ECF No. 31-1, at 3 ("accidents need to be

scrutinized *in order to draw data and information* with which to

address these high fatality rates." (emphasis added)).) *See*

*also Lauer v. City of New York*, 95 N.Y.2d 95, 102 (2000)

(holding that the Medical Examiner's statutory duty to prepare

post-autopsy reports and report to the District Attorney

benefits "the public at large" and was not enacted for

individual benefit).  Creating a tort under Section 603-a would

not further the provision's primary purpose— allowing the

Commissioner to assess the causes of serious motor vehicle

accidents.  A private right of action is similarly inconsistent

with the purpose of Section 603.  The Court of Appeals has

articulated the legislative intent behind Section 603 as

follows:

> The police reports [required by Section 603] are
> designed to serve several administrative functions,
> such as aiding the Commissioner of Motor Vehicles in
> promulgating regulations to enhance the safety of our
> roads . . ., and assisting in the prompt resolution of
> personal injury and property damage claims against
> automobile owners and insurers arising from automobile
> collisions.

*People v. Quackenbush*, 88 N.Y.2d 534, 540 (1996) (citing Bill

Jacket, L. 1969, ch. 517; Bill Jacket, L. 1973 ch. 634.))

Although the legislative history mentions resolution of personal injury claims, it does so in the context of facilitating already available tort and insurance causes of action. Inferring a new cause of action would not further the reporting and record-keeping purpose of this provision; instead doing so would only interfere with the remedial scheme contemplated by the legislature. Therefore, the Court of Appeals' prior precedents and the VTL's legislative history provide "persuasive data" that the state's highest court would not rule in accord with *Cunningham*.

Even were this court to follow the holding in *Cunningham*, it is not clear that plaintiff would have a cause of action. *Cunningham* addressed Sections 600 and 603 of the VTL, not Section 603-a. Plaintiff's allegations do not describe a violation of Section 603. As previously discussed, Section 603 requires that an investigation take place and that a report be delivered to the Commissioner of Motor Vehicles. There is no allegation in the Amended Complaint that a report was not made to the Commissioner. Instead, plaintiff alleges that the defendants did not investigate the crash "immediately," as required by statute. (Am. Compl. ¶ 122.) It is undisputed, however, that the City defendants arrived promptly at the scene of the accident and did conduct some investigatory actions, including measuring Webb's blood alcohol content at the scene,

leading to Webb's arrest for driving while intoxicated. (Am.
Compl. ¶¶ 32-33.) In light of the fact that, unlike Section
603-a, Section 603 does not specify the type of investigation
that must occur, plaintiff does not appear to have stated a
cause of action under VTL Section 603, the only provision
relevant to this case that *Cunningham* addressed.

For the foregoing reasons, the court finds that no
special duty was created under VTL Sections 603 and 603-a and
that a private right of action cannot fairly be read into these
provisions of the VTL.[8] Accordingly, the City defendants' motion
to dismiss Counts Five through Seven of the Amended Complaint is
granted.

b. Negligent Failure to Train and Supervise Claim

It is unclear from plaintiff's opposition papers to
the City defendants' motion to dismiss whether plaintiff still
presses his failure to train and supervise claim against
defendants Bono and Roe. (Am. Compl. ¶¶ 137-43.) In any event,

---

[8] As noted previously, plaintiff appears to have abandoned any argument that a
special relationship was formed with the police based on the City's
voluntarily assuming a duty to investigate. Even if plaintiff pressed this
claim, however, this cause of action would not succeed. As defendants note,
the type of general promises plaintiff states were made to him that the
police would investigate have been held not to be sufficiently specific to
create a special duty based on justifiable reliance. *See Dinardo v. City of
New York*, 13 N.Y.3d 872, 874-75 (2009). Moreover, the Court of Appeals has
also held that when assistance and promises of assistance do not go beyond
what is required of that municipal entity by law, no affirmative duty has
been created. *Pelaez*, 2 N.Y.3d at 203 (holding that no affirmative duty was
created where a county health inspector promised additional inspections and
erroneously told plaintiff she need not test her child for lead exposure
immediately). Therefore, the court finds that the City had no special duty
based on a voluntary assumption of responsibility.

the court finds that plaintiff cannot state a claim for

negligent failure to train and supervise the officers at the

scene.

> Under New York law, a claim for negligent hiring,
> training, and supervision, "in addition to the
> standard elements of negligence," requires "a
> plaintiff [to] show (1) that the tortfeasor and the
> defendant were in an employee-employer relationship;
> (2) that the employer knew or should have known of the
> employee's propensity for the conduct which caused the
> injury prior to the injury's occurrence; and, (3) that
> the tort was committed on the employer's premises or
> with the employer's chattels."

*Hollis v. City of New York*, No. 10-CV-1650, 2014 WL 836950, at

*11 (S.D.N.Y. Mar. 3, 2014) (quoting *Ehrens v. Lutheran Church*,

385 F.3d 232, 235 (2d Cir. 2004)). Although an employee-

employer relationship must exist between the tortfeasor and

defendant, claims for negligent training and supervision are not

stated where an employee is acting within the scope of his or

her employment. *Velez v. City of New York*, 730 F.3d 128, 137

(2d Cir. 2013). "If the employee acted within the scope of her

employment, the employer and the employee's supervisors may be

held liable for the employee's negligence only under a theory of

*respondeat superior*." *Id.* (citing *Karoon v. N.Y.C. Trans.

Auth.*, 659 N.Y.S.2d 27, 29 (1st Dep't 1997)).

Plaintiff's allegations regarding Bono and Roe's

negligent supervision and training of Doe, apparently an

unidentified AIS detective, and Roe's negligent training of Bono

all relate to actions within the scope of Doe's and Bono's employment. Specifically, plaintiff alleges that neither Doe nor Bono was properly trained to determine when an accident victim was seriously injured or likely to die. (Am. Compl. ¶¶ 139, 141.) Because all of these allegations relate to Bono and Doe's ability to perform a duty within the scope of their employment with the NYPD, plaintiff has not stated a claim for negligent supervision and training. Defendants' motion to dismiss this claim, alleged as Count Eight of the Amended Complaint, is, therefore, granted.

### c. *Respondeat Superior* Claim

Finally, plaintiff seeks to hold the City liable for the acts and omissions of the individually named defendants based on a theory of *respondeat superior*. "Under the doctrine of *respondeat superior*, an employer may be vicariously liable for the tortious acts of its employees . . . if the acts were committed in furtherance of the employer's business and within the scope of the employment." *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251 (2002) (citing *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979)). Because the court has found that plaintiff has not stated a claim for negligence by a City employee, *respondeat superior* liability against the City is inapplicable here. *See, e.g.*, *Velez*, 730 F.3d at 137 (discussing *respondeat superior* liability and noting that "if the employee was not

29

negligent, there is no basis for imposing liability on the employer."). Defendants' motion to dismiss plaintiff's *respondeat superior* claim, Count Nine of the Amended Complaint, is also granted.

## CONCLUSION

Despite the tragic nature of this case and the alleged deficiencies of the investigation of Ms. Heyworth's death, for the reasons stated in this Memorandum and Order, the court cannot conclude that plaintiff has stated a claim against the City defendants under either state or federal law. The City defendants' motion to dismiss is therefore granted in its entirety, and Counts Five through Twelve of the Amended Complaint are dismissed. The parties shall submit a joint status letter to the court by April 4, 2014 regarding how they intend to move forward with the remaining state law claims against Webb and Cubia-Webb.


**SO ORDERED.**


Dated:      March 21, 2014
            Brooklyn, New York

                                     _____/s/_____
                                     Kiyo A. Matsumoto
                                     United States District Judge
                                     Eastern District of New York